UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEITH K.,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. C19-5110 TSZ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

  Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony and four medical sources' opinions. Dkt. 11. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

  Plaintiff is currently 46 years old, has a high school education, and has no past relevant work. Dkt. 8, Admin. Record (AR) 50. Plaintiff applied for benefits in January 2015, alleging disability as of June 23, 2011. AR 229. Plaintiff's applications were denied initially and on reconsideration. AR 227, 228, 253, 254. After the ALJ conducted hearings in 2016 and 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 130, 163, 34-52.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the June 2011 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: chondromalacia patellae; diabetes mellitus; gout; obesity; post-traumatic stress disorder (PTSD); social phobia; personality disorder, not otherwise specified; generalized anxiety disorder; major depressive disorder; and borderline personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, except he can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to vibrations and pulmonary irritants. Plaintiff can perform unskilled and semi-skilled tasks, up to a specific vocational preparation (SVP) level of 4. He can have no public interaction, superficial contact with coworkers, and occasional interaction with supervisors. He can perform low-stress work, defined as requiring few decisions and few changes. He can perform at a standard or ordinary pace but not a strict production rate pace in which he has no control over the speed of the work.

**Step four:** Plaintiff has no past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

AR 37-52. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.

# DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence" is

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.    Plaintiff's Testimony**

In a 2015 Function Report, Plaintiff stated that he cannot work due to lack of focus, flashbacks, paranoia, and anxiety. AR 444. At the 2016 hearing, Plaintiff testified that he avoids people. AR 141. Aside from medical appointments he only leaves his house once or twice a month, to pay bills. AR 142. Diabetes and anxiety cause fatigue, so he can only work on a task such as cleaning his home "for a little bit" before he gets tired and must rest for 15 to 20 minutes. AR 151-52.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony as

inconsistent with his activities, objective medical evidence, and improvement with conservative treatment. AR 47-48.

### 1. Activities

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff argues that the ALJ did not explain how his activity of caring for his son contradicted his testimony. Dkt. 11 at 12. Even if that one activity did not, the ALJ cited going to a library or coffee shop nearly daily for multiple hours, which contradicted his testimony that he only left the house twice a month. AR 47, 46, 44. Plaintiff developed new friendships, contradicting his testimony that he avoids people. AR 47 (citing AR 728, 734, 908, 945, 950, 951). Plaintiff's activities were a clear and convincing reason to discount his testimony.

### 2. Objective Medical Evidence

"Although lack of medical evidence cannot form the sole basis for discounting [symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. The ALJ relied on examinations showing normal orientation, mood, affect, insight, judgment and thought content. *See* AR 48 (citing AR 656, 659, 671, 674, 775, 780, 811, 837, 884, 888-89, 896). Plaintiff argues that the normal mental status examinations were only done "in passing" during appointments for unrelated issues, and the ALJ "cherry picked" the evidence by ignoring three examining psychologists' findings. Dkt. 11 at 12. Yet even their examinations showed almost entirely normal results, except for mood and affect and sometimes concentration. *See* AR 716-17, 901-02, 940-41, 992-93. These support, rather than undermine, the ALJ's conclusions. Lack of supporting objective medical evidence was another valid reason

to discount Plaintiff's testimony.

### 3. Treatment

An ALJ may properly discount claimant testimony when the record shows the claimant "responded favorably to conservative treatment," and failure to seek aggressive treatment can be a sufficient reason to discount claimant testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). Plaintiff concedes that he experienced "some improvement in social interactions with treatment," but argues that he remained limited. Dkt. 11 at 12. The ALJ incorporated extensive social restrictions of no public contact, superficial coworker contact, and occasional supervisor contact into the RFC, and reasonably rejected Plaintiff's testimony of more extreme limitations. AR39. Improvement with conservative treatment was another clear and convincing reason to discount Plaintiff's testimony.

### 4. Degree of Limitation

Plaintiff argues that the ALJ found that Plaintiff's social interaction was markedly limited, and this was consistent with Plaintiff's testimony. Dkt. 11 at 12. At step three, when considering whether Plaintiff had a listed mental impairment, the ALJ concluded that "[i]n interacting with others, the claimant has a marked limitation." AR 38. The ALJ rejected more extreme limitations, however, because Plaintiff "was able to establish some friendships and maintain some family relationships, including caring for his disabled son." AR 38. As the ALJ noted, the assessment at step three is "not a residual functional capacity assessment…. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." AR 39. In the RFC assessment, the ALJ accepted evidence of social limitations and imposed extensive social restrictions. AR 39. However, the ALJ rejected Plaintiff's allegations of disabling social interaction limitations, such as being

unable to leave the house more than twice a month except for medical appointments. There is no contradiction in accepting some serious limitations yet rejecting disabling limitations.

Plaintiff also argues that the ALJ's reasons for discounting his testimony did not specifically address his allegations of disrupted sleep, flashbacks, and fatigue that led to frequent breaks and taking a long time to complete tasks. Dkt. 11 at 12; AR 148, 151-52. Disrupted sleep, flashbacks, and fatigue are not functional limitations that could be incorporated into an RFC. There is no dispute that Plaintiff experiences symptoms from his impairments but, as discussed above, the ALJ reasonably discounted the severity he alleged. The ALJ limited Plaintiff's lifting, standing/walking, postural movements, and stressors. AR 39. Although Plaintiff testified that it takes him a long time to clean his living room, the ALJ reasonably interpreted the record as a whole, including Plaintiff helping his parents clean their home and farm and picking apples, to show that Plaintiff can work full-time in jobs consistent with his limited RFC. *See Burch*, 400 F.3d at 680-81 (ALJ's interpretation must be upheld if rational); AR 44, 46, 904, 909, 952.

The Court concludes the ALJ provided multiple clear and convincing reasons, and thus did not err by discounting Plaintiff's testimony.

**B.  Medical Opinions**

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as a mental health counselor, by giving reasons germane to the opinion. *Id.*

### 1. Kimberly Wheeler, Ph.D.

In October 2014, Dr. Wheeler examined Plaintiff and filled out a Psychological/ Psychiatric Evaluation form, opining that he had marked limitations in adapting to changes in routine, communicating and performing effectively, and completing a normal work day and work week without interruptions from psychologically based symptoms. AR 715-16. In October 2017, Dr. Wheeler again examined Plaintiff and opined the same marked limitations as well as a marked limitation in asking simple questions or requesting assistance. AR 991. The ALJ gave Dr. Wheeler's marked limitations "little weight" because they were inconsistent with Plaintiff's activities. AR 49. Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162.

Plaintiff contends the identified activities are not inconsistent with the limitations Dr. Wheeler opined, because he performed them "in a self-scheduled way, with chances for breaks, no minimum standards, and with help if needed." Dkt. 11 at 7 (citing *Garrison*, 759 F.3d at

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 7

1016-17). Activities the ALJ cited included spending hours a day at a coffee shop or the library and interacting with people there, and meeting people and developing new friendship. AR 44, 46, 47. These activities directly contradict Dr. Wheeler's limitations. Plaintiff was able to adapt to different environments. Plaintiff was able to communicate effectively with people in the coffee shop and library. Spending multiple hours at a coffee shop or library, when Plaintiff could leave whenever he wanted, suggests he would be able to complete a normal work day. These activities provided a specific and legitimate reason to reject Dr. Wheeler's opinions.

The Court concludes the ALJ did not err by discounting Dr. Wheeler's opinions.

**2.     Peter A. Weiss, Ph.D.**

In July 2016, Dr. Weiss examined Plaintiff and opined that he had severe limitations in maintaining punctual attendance and in completing a normal work day and week, and a marked limitation in the ability to set realistic goals and plan independently. AR 939. The ALJ gave these opinions "little weight" as inconsistent with the evidence discussed throughout the decision. AR 49.

Plaintiff again argues that his activities are not inconsistent with the limitations Dr. Weiss opined, because he could take breaks, get help, work at his own pace, and without any minimum standard. Dkt. 11 at 8 (citing *Garrison*, 759 F.3d at 1016-17). Again, Plaintiff's activities contradict Dr. Weiss' limitations. Spending multiple hours at a coffee shop or library around multiple strangers suggests he would be able to complete a normal work day. He showed up every day. He was able to set goals and plan sufficiently to maintain a home for himself and his disabled adult son.

The Court concludes the ALJ did not err by discounting Dr. Weiss' opinions.

### 3. C. Mark Anderson, Ph.D.

In 2015, Dr. Anderson examined Plaintiff and opined that his "social interaction was severely compromised" and he would "probably continue to struggle with isolation and trust issues in his future," but "[w]ith supportive counseling [he] should be able to gain psychological insight into managing his condition." AR 903. The ALJ gave Dr. Anderson's opinions "partial weight" and concluded that they supported the finding the Plaintiff could "adapt and manage his condition with mental health treatment" such as counseling. AR 49.

Plaintiff contends that even with counseling he remained impaired. Dkt. 11 at 9. The ALJ accounted for Plaintiff's social impairments in the RFC. AR 39. Plaintiff has not shown any limitation opined by Dr. Anderson that was not accounted for in the RFC. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (concluding that the ALJ is not required to provide reasoning to reject limitations that are reasonably incorporated into the RFC).

The ALJ did not err in his handling of Dr. Anderson's opinions.

### 4. Sandra Ames, LMHC

In 2016, Plaintiff's treating mental health counselor, opined that he was markedly limited in most work-related tasks. AR 928-32. The ALJ rejected the marked limitations because they were unsupported by Ms. Ames' treatment notes and inconsistent with Plaintiff's activities and other medical evidence. AR 49.

Plaintiff argues that his activities and the medical record were consistent with Ms. Ames' opinions. Dkt. 11 at 11. On the contrary, Ms. Ames' opined marked limitations in working in proximity to others and interacting appropriately with the general public were contradicted by Plaintiff's ability to spend hours at a coffee shop or library around strangers. *See* AR 928, 929. The opined marked limitation in maintaining socially appropriate behavior and adhering to basic

neatness/cleanliness standards was contradicted by multiple mental status examinations showing a clean, hygienic appearance. See, *e.g.*, AR 940, 992. He was able to set goals and plan sufficiently to maintain a home for himself and his disabled adult son.

The Court concludes the ALJ did not err by discounting Ms. Ames' opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 3rd day of October, 2019.

Thomas S. Zilly
United States District Judge